THOMAS E. PERRINE, guardian, appellant,

*v.*

JOHN PETTY et al., executors, respondents.

1. The 118th and 119th sections of the orphans court act (*Rev.* 778) are intended to protect the estates of decedents from misapplication or waste by executors &c., and being remedial, must be liberally construed.

2. A legacy was given to an infant to be put out on bond and mortgage, and to be paid when the infant attained the age of twenty-one years, with interest accruing thereon. *Held,* that it was the duty of the executors to compound the interest as it accrued, by investing it as soon as practicable thereafter.

3. An executor who, without authority, lends such a fund to his co-executor,

on inadequate security, is liable for the amount of the principal and compound interest; and the fact that such investment is stated in his account in the orphans court will not exonerate him.

4. The true test in considering the sufficiency of the security for a trust fund, is the price which the property would bring at a forced sale.

---

On appeal from decree of Middlesex orphans court.

*Mr. D. A. Storer,* for appellant.

*Mr. A. H. Strong,* for respondents.

THE ORDINARY.

The 118th section of the orphans court act (*Rev. 778*) provides that whenever application shall be made to the orphans court, by which letters testamentary or of administration or guardianship were issued, or to the president judge thereof, by petition by or on behalf of any person interested in any estate in the hands of any executor, administrator, guardian or trustee, verified by affidavit, alleging that such executor, administrator, guardian or trustee has wasted, embezzled or misapplied the estate entrusted to him, the court or judge, by an order, may compel discovery to be made of the condition of the estate by the production of books, papers and documents relating to the estate or by the examination of such executor, administrator, guardian or trustee, and witnesses, and may take such proceedings for the protection of such estate, by order or decree, as may be taken in like cases in the court of chancery, and compel obedience to such order or decree by the same process and in the same manner as orders or decrees of the court of chancery are enforced.

The 119th section (*Ibid.*) provides that whenever proof shall be made to the satisfaction of the orphans court that the property in the hands of any executor or trustee, under a will, is unsafe, insecure or in danger of being wasted, the court, at the instance of any person interested in the estate of the testator, or in such trust estate, may require such executor or trustee to give security to the ordinary of this state by bond, with sureties, in such

amount as the court shall deem proper, conditioned for the faithful performance by such executor or trustee of his duty under the will of the testator.

These sections are remedial, and therefore are to be construed liberally. The object of the first is to protect estates against the misconduct of the guardians thereof in embezzling, wasting or misapplying them, by compelling such guardians, when such misconduct has been established, to make restitution. The design of the other is to protect estates in the hands of executors or trustees, under wills, against the danger of such waste or loss, by requiring the executors or trustees to give security. Where an executor or trustee under a will applies to his own use the money of the estate, or the fund entrusted to him for investment, giving, as security for its repayment, only an insufficient pledge of his own property, it is no stretch of construction to hold that he has been guilty of misapplication, within the meaning of the 118th section, above quoted. And where one of two executors or trustees lends the money which they are bound to invest, to the other on insufficient security, he has, at least so far as the security is insufficient, been guilty of waste. And under the two sections above quoted, there is ample power of protection. Whatever the court of chancery might do in the premises in such case, the orphans court may do. Chancery may require the faulty fiduciary to account for the money, and bring it into court. The 119th section of the orphans court act, above quoted, authorizes the orphans court to require security where the property is not secure or in danger of being wasted.

In the case in hand, Nelson Petty, deceased, by his will, gave to Nelson P. Rockafellow $2,000, "to be put out on bond and mortgage, and to be paid to him when he arrives at the age of twenty-one years, with interest accruing thereon." The will was admitted to probate August 26th, 1869. The respondents, John and Isaac Petty, are the surviving executors. On the 5th of May, 1875, they invested that legacy in a mortgage, given by John Petty, one of the executors, and his wife, to Isaac, the other executor, as such executor, on a farm of the mortgagor of one hundred and two and a quarter acres, in Middlesex county.

The bond which the mortgage was made to secure is conditioned for the payment of the $2,000, and interest from June 16th, 1871, to Nelson P. Rockafellow, when he arrives at his majority, or in case of his death, to such person as may be entitled to receive the money. The respondents settled their final account (which was joint), as executors, in the term of September, 1875, of the Middlesex orphans court. The letters testamentary were granted in that court. They prayed and obtained allowance for the $2,000 legacy as being in the hands of Isaac Petty. In November, 1879, Thomas E. Perrine, guardian of Nelson P. Rockafellow, filed his petition in that court, alleging that the legacy had been invested on wholly inadequate security, and that there had never been any investment of the interest, and praying a discovery and relief, according to the statute. An order for discovery was made. It was, however, discharged March 2d, 1880, on the ground that the respondents had made a satisfactory discovery of the condition of the estate; but, at the same time, the court granted the petitioner leave to ask the further aid of the court, on filing a new petition for the purpose.

On the 15th of March, 1880, in pursuance of that permission, a new petition was filed, setting forth the filing of the former one, and the proceedings under it, including the discovery as to the before-mentioned investment, alleging that Nelson P. Rockafellow will not attain his majority until December 27th, 1884; that there will then be due and payable, on the mortgage, at simple interest merely, the sum of $1,894.41; that he is also entitled to $112.76, for interest on the legacy from August 26th, 1870, one year from the date of probate of the will, to the time, June 16th, 1871, fixed in the mortgage as the period at which the interest thereon began, and that on the principle of investing the interest, as it becomes due annually, he will, at twenty-one, be entitled to the further sum of $879.97. It prays an account and an order directing John Petty to pay over to his executor the interest already due on the mortgage, with the amount which would have accrued thereon if invested annually, or to pay over the principal, also, together with those moneys; and it prays,

Perrine v. Petty.

also, for such order as to the court may seem proper, having for its object the safe investment of the $2,000, and the interest already accrued thereon.

After hearing, that petition was, by order of December 15th, 1880, dismissed, on the ground that the petitioner was entitled to no relief. From that order this appeal was taken.

The evidence (which is that which was taken under the petition for discovery) discloses the fact that the farm on which the mortgage is, was purchased by John Petty, the mortgagor, in 1869, for $32 an acre, or $3,272, and it is shown that land in that neighborhood will not bring as much (some witnesses say not over half as much) as it did in 1869. John Petty testifies that he considers the farm worth $60 an acre, or $6,135 for the property.

His three witnesses estimate the value at from $40 to $55 an an acre, or from $4,090 to about $5,625 for the farm. On the other hand, the five witnesses on the part of the petitioner estimate it at only from $20 to $30 an acre, or from $2,045 to about $3,067 for the property.

The property appears to be but an indifferent one at best. It seems that much of the land is wet, and it is even said by some of the witnesses that about fifty acres of it are covered with bulrushes and about fifteen with scrub-oaks.

The valuations of the witnesses of the parties range, it will have been seen, from $2,045 to $5,625. But none of them speak of the price which the property would bring at a forced sale, and, in considering the sufficiency of the security for a trust fund, that is the true test.

It is entirely clear that the testator intended that the interest on the legacy should accumulate up to the time of the legatee's majority. He certainly did not intend to give the use of the interest to his executors. Between the period of one year from the time of the issuing of the letters testamentary and the time when the legatee will attain his majority, is a period of fourteen years.

The executors under such a trust as that created by the will with reference to the legacy, are bound to accumulate the inter-

est, notwithstanding the absence of any direction to that effect in the will. *Perry on Trusts* § *622*. In .disregard of this obligation, one of the executors was permitted to take the fund on the agreement to pay it over, with simple interest merely, whenever the fund shall be payable.

The executors are both bound to answer for interest upon the interest of the fund. The fact that in their final account allowance was prayed and granted for the principal as being in the hands of one of them, will not exempt the other from liability in the premises. When that account was passed they were both charged with a duty with regard to the fund, from which that allowance did not discharge Isaac Petty. That duty was to invest the fund and attend to its safety and increase. The allowance in the final account was an admission that they had the fund and a statement that it was in the hands of one of them. It was not even stated in the account that it was invested. If Isaac Petty had before that time lent the fund to his co-executor, on insufficient security, that allowance surely would not relieve him from liability for the consequences of the act. If it were conceded that the farm is worth $50 an acre, $5,112.50 for the property, the amount which will be due on the mortgage, $3,894.41, at the legatee's majority, at merely simple interest, is more than two-thirds of its value. The evidence, however, will not warrant that valuation. The security is not an allowable one, for the whole amount of the principal and interest. The interest should have been payable half-yearly, and John Petty should have paid it over as it accrued, and when paid it should have been invested as soon as reasonably practicable. Under the circumstances, the executors are both chargeable with the fund and the accrued interest thereon, and interest upon the interest. They should be required to pay the fund into court, with the interest accrued and interest thereon, and to that end should come to an account with respect thereto.

The order appealed from will be reversed, with costs.